## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILMA BIVIN-HUNTER and )
CHRIS HUNTER,                )
                             )
    Plaintiffs,            )
                             )    Civil Action File No.
vs.                          )    1:09-CV-3465
                             )
WYNDHAM VACATION             )
RESORTS, INC., and JOHN DOES )
1-5,                         )
                             )
    Defendants.            )
_____  )

## BRIEF IN OPPOSITION TO DEFENDANT WYNDHAM VACATION RESORTS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

COME NOW, Plaintiffs and file this Brief in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim. As Defendant's argument is based on the contention that all alleged misrepresentations occurred prior to or contemporaneously with a signed contract with a merger clause, Defendant's Motion should fail because of the following:

1.    Plaintiffs have alleged that Defendants made numerous unauthorized withdrawals after the signing of the alleged contract;

2.      Plaintiffs have alleged misrepresentations and omissions on the part of Defendant after the alleged contract, including during the ten days after signing which allow for cancellation and recessions, which support claims for fraud, misrepresentation and breach of contract, as well as Georgia RICO Act;

3.      Plaintiffs have alleged violations of the alleged contract terms, as well as the breach of the duties of good faith and fair dealing; and

4.      Plaintiffs also deny the validity of any such alleged partial contract as a complete agreement, as it was obtained by fraud.

In the alternative, if the Court decides that Plaintiffs have not sufficiently plead the facts necessary to support their claims, Plaintiffs request that this Court allow Plaintiffs the opportunity to amend their Complaint to fully outline the facts that support their causes of action.

## I. STATEMENT OF FACTS

In November of 2008, Plaintiff Wilma-Bivin Hunter ("Ms. Hunter") visited a timeshare in Lake Lure, North Carolina.  During the trip, Ms. Hunter met with Toni Davis and Mike Duncan to address certain concerns she had about her account.  *See* Complaint, paragraph 6.  Ms. Hunter addressed her displeasure with a recent increase in maintenance fees at

Royal Vista in Florida and Fairfield Glade in Tennessee to 692,000 and 154,000 points, respectively. *Id.*, paragraph 7. Additionally, Ms. Hunter noted concerns regarding property taxes paid on the Royal Vista property in Florida and another property, Cypress Palms in Orlando. *Id.* Mr. Duncan represented that there was a way to lower the maintenance fees to the lowest in the Company to alleviate the issues of property tax. His solution entailed the purchase of property called National Harbor at a new resort in Washington for $2.92 per 1,000 points. *Id.*, paragraph 8. Ultimately, the deal stated that 314,000 points would be purchased for the price of $22,849. Defendant Wyndham through its agents stated that to get the deal started, it was necessary to sign a contract for 105,000 points at National Harbor on November 17, 2008 with a down payment of $1,664.90. *Id.*, paragraph 11, This document expressly provided a ten day rescission and cancellation period. *See Defendant's Motion to Dismiss*, Exhibit 1, paragraphs 16 and 33. Defendant's agents represented, both before and in the days after the first documents were signed, that additional documents would be provided and signed. *See* Complaint, paragraphs 9-13. To date, Plaintiffs, despite representations made after November 17, 2008, and Defendants' obligation to provide such documentation in paragraph 22 of the purported Agreement,

have never received the additional documentation to complete the agreement.

Ms. Hunter began to receive conflicting materials and information regarding the agreement, and still had not received the additional documentation promised in the next few days after signing the agreement. *Id.*, paragraph 14. Ms. Hunter then sought to contact the sales office regarding these representations and rescinding the agreement, only to be told it was closed. *Id.* Once she was finally able to reach someone to inquire about the National Harbor contract, no one in could give her an answer and claimed they had no knowledge of the deal. *Id.* Indeed, Defendant was attempting to stall so Plaintiffs could not seek to rescind the now conflicting agreement. Defendants effectively committed fraud and then continued to fail to disclose their deceptions and continued to mislead Ms. Bivin-Hunter in an attempt to run out the clock so they could seek to rely on a partial contract's merger clause as a defense to their misrepresentations and theft by deception.

Ms. Hunter was given the number of a contact person in Orlando who continued to assure her that the matter would be resolved in accordance with the original agreement. *Id.*, paragraphs 14 and 15. However, ultimately, he also was unwilling and unable to resolve the issues that arose from the

continued representations and no representations were made regarding any additional costs. *Id.* Again, the additional paperwork also never arrived.

She then attempted to resolve the matter with Alicia Dickson. Only after many conversations, both before and after the alleged partial agreement, was Ms. Hunter now informed that it would cost $198,494.00 to transfer all the points to National Harbor. *Id.*, paragraph 15. Despite numerous conversations, both before and after the signing of the alleged partial contract, this representation had never been previously made to Plaintiffs. *Id.*

Additionally, without knowledge of the Plaintiffs, monies for the National Harbor property were being deducted from Plaintiff Chris Hunter's ("Mr. Hunter") separate corporate bank account. *Id.*, paragraph 16. The unauthorized withdrawals occurred for months before Plaintiffs determined that Defendants had been illegally taking these monies. *Id.* Ms. Hunter informed Ms. Dickson of the material omission and multiple counts of theft by deceptions and demanded a return of Plaintiffs' lawfully owed monies. *Id.*, paragraph 17.

## II. ARGUMENT AND CITATION TO AUTHORITY

Under Federal law there is a strict standard for granting a motion to dismiss for failure to state a claim. "The test is whether the complaint,

*construed in the light most favorable to the plaintiff* and with every intendment regarded in his favor, is sufficient to constitute a valid claim." Stanaland v. Atlantic Coast Line R. Co., 192 F.2d 432 (5th Cir. 1951). "Before a court may dismiss a claim for failure to state a claim on which relief can be granted, it must appear beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." U.S. v. Wynn, 528 F.2d 1048 (5th Cir. 1976). *citing:* Fed.Rules.Civ.Proc. Rule 12(b)(6). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." Woodham v. Federal Transit Admin., 125 F.Supp.2d 1106, 1108 (N.D. Ga. 2000). Finally, a court is bound to "accept the allegations in the complaint as true", and can only grant a motion to dismiss "when the movant demonstrates beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003), Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183 (11th Cir. 2004). In this instance, the movant has not carried that burden.

**A.   Plaintiffs Have Sufficiently Pled Claims for Fraud and Negligent Misrepresentation and These Claims Are Not Facially Subject to the Affirmative Defense of Estoppel as a Result of the Merger Clause.**

Defendant does not dispute that Plaintiff has made a prima fascia case for fraud and negligent misrepresentation but, rather, that Plaintiff's fraud claim is barred by the affirmative defense of estoppel as a result of the merger clause contained in a "Vacation Ownership Purchase and Sale Agreement" ("the Agreement").   Defendants cite the case of <u>Canatella v. Davis</u>, 264 Md. 190 (1972) noting that in that case, the Maryland Supreme Court reversed a trial court's decision to allow the plaintiff to submit evidence of an alleged agreement between the parties.   *See Brief In Support of Defendant Wyndham's Motion To Dismiss*, p. 6.   However, Defendant's arguments should fail because Plaintiffs have alleged fraud and negligent misrepresentation that occurred after the execution of the alleged agreement. Defendant took advantage of Plaintiffs' reasonable reliance to seek to stop them from seeking any rescission and to illegally obtain funds from Mr. Hunter.

Plaintiff's case differs from the <u>Canatella</u> decision cited by Defendant in two important respects.   First, in <u>Canatella</u>, the Court held that the Plaintiff had failed to establish the second element necessary for a deceit

action, namely, "he has not shown that Canatella knew the statement of acreage to be false and it can hardly be said that 'the misrepresentation was made with such reckless indifference to truth as to impute knowledge to Canatella." In this matter, Plaintiffs have alleged several material misrepresentations and omissions, as well as Defendants' superior knowledge. *See* Complaint, paragraphs 7-17.

Additionally, unlike that matter, Plaintiffs have alleged continuing fraud both before and after the execution of the document. The Maryland Court at issue stated that "no principle of law is more firmly settled than that which excludes parol evidence from being used either at law or in equity for the purpose of contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect, *except where it is impeached for fraud,* or where it is sought to be reformed upon allegations of fraud, accident or mistake." Id. (emphasis added). First, Canatella actually belies Defendant's argument that grounds for a motion to dismiss Plaintiff's fraud claim are present in the instant matter. In addition to paragraph 7-17, paragraph 35 of Plaintiff's Complaint states that representations made by Defendant were "material and false and Defendants were aware that the statements were false." *Complaint*, paragraphs 7-17, 35. Further, Plaintiffs have alleged "Defendants did not intend to transfer

8

Plaintiffs' ownership or reduce their fees, or intend to allow Plaintiffs to own the properties represented at the cost. Defendant also committed fraud by omissions by secretly withdrawing funds from Plaintiff Chris Hunter's corporate account without authorization." *Id.* Defendant continued to make false representations and omissions after the execution of the partial agreement to run out the clock and seek to stop Plaintiffs from exercising any rights to rescission that existed in the partial contract. Assuming these allegations are true, as the Court must at this juncture, Plaintiffs have made a case for negligent misrepresentation and fraud which would survive any defense based on the merger clause.

Although Plaintiffs dispute that Maryland law should apply[1], even the more stringent Maryland law does not preclude actions for fraud and

---

[1] In addition to concerns regarding whether there is even a valid contract due to the fraud at issue, the alleged choice of law provision only applies to the agreement and not to any torts, stating "This Agreement shall be governed and construed in accordance with the laws of the State of Maryland." See Agreement, paragraph 24. Where an agreement does not explicitly state that all claims shall be governed by a specific law, the choice of law provision does not apply to tort claims. *See* <u>Young v. W.S. Badcock Corp.</u>, 222 Ga.App. 218, 474 S.E.2d 87 (1996).

misrepresentation for omissions and representations that continue or occur after the execution of an alleged agreement. Maryland law limits the effect of merger clauses to oral representations only until the time of the agreement, noting that "all oral negotiations or stipulations between the parties preceding or accompanying the execution of a written instrument, are to be regarded as merged in it." Greenfield v. Heckenbach, 144, Md. App. 108 (2002). As such, Plaintiffs have alleged that Defendant made further misrepresentations regarding the matter following the execution and that Defendant surreptitiously engaged in the unauthorized deduction of money from Mr. Hunter's bank account. For purposes of this Motion, all allegations in Plaintiffs' amended complaint are to be treated by the Court as true and construed in a light most favorable to Plaintiffs. Therefore, based on these allegations, Defendant's Motion should be denied.

## B.  Plaintiffs Have Sufficiently Pled a Claim for Breach of Contract.

Defendants again argue that the  existence of a merger clause in the Agreement signed by the parties prevents a recovery in contract because it operates as a disclaimer, and a party cannot assert they relied upon representations other than those contained in the contract. Plaintiffs again rely on the above-cited case law stating that "all oral negotiations or stipulations between the parties preceding or accompanying the execution of

a written instrument, are to be regarded as merged in it." Greenfield v. Heckenbach, 144, Md. App. 108 (2002). However, in this instance Plaintiff relied on subsequent representations made by Defendant. Defendant continued to represent that additional documentation would arrive in the days following the alleged agreement. The representations and promises are not only admissible, but binding upon the Defendant. This ratification of the original deal Ms. Hunter entered into with Mr. Duncan in November, 2008, is not precluded under either Georgia or Maryland law.

Furthermore, the allegations evidence a breach of the duties of good faith and fair dealing, which are recognized in both Georgia and Maryland law. The requirement that a party exercise good faith and honest judgment, even where the contractual language grants the party discretion, arises from the implied duty of good faith and fair dealing imposed upon virtually every contract under Georgia law. See ULQ v. Meder, 293 Ga. App. 176, 179-180(1), 666 S.E.2d 713 (2008) (The concept of good faith encompasses basic notions of "fairness and commercial reasonableness.") Hunting Aircraft v. Peachtree City Airport Auth., 281 Ga. App. 450, 452(1), 636 S.E.2d 139 (2006) ("[A] decision was not made in good faith if it was made for arbitrary or capricious reasons, was based on an improper pecuniary motive, or was predicated on dishonesty or illegality."); see also Julian v.

11

Christopher, 575 A.2d 735, 738-39 (Md. 1990) ("[A] promisor who undertakes to exercise judgment on behalf of a promisee impliedly agrees to exercise good judgment.")

Plaintiffs' allegations that Defendant continued to materially misrepresent important information to induce Plaintiffs from refraining from cancelling the alleged partial agreement are sufficient as factual issues to preclude Defendant's Motion. Whether a party exercised good faith and honest judgment in the performance of a contract is a factual question for the jury to resolve. See Camp v. Peetluk, 262 Ga. App. 345, 350(2), 585 S.E.2d 704 (2003); Rogers v. Farmers & Merchants Bank, 247 Ga. App. 631, 633, 545 S.E.2d 51 (2001); Ginn v. Citizens & Southern Nat. Bank, 145 Ga. App. 175, 177(1), 243 S.E.2d 528 (1978). In this matter, Plaintiff has not only alleged that Defendant breached this duty in the fraud occurring through its execution, but that Defendant purposefully engaged in chicanery designed to stop Plaintiff from learning its true intent and to frustrate Plaintiffs' ability to rescind the partial contract in accordance with provisions in paragraphs 16 and 33. As Plaintiffs' allegations must be taken as true for purposes of this Motion, this is sufficient to survive Defendants' Motion.

Additionally, Defendant breached the contract by failing to provide the additional documentation it promised. This obligation was memorialized

in the alleged partial contract, in Section 22, which notes "BUYER and SELLER agree to execute any additional documents which may be needed to carry out the intent and purposes of the parties to this Agreement." Despite promising to forward such additional documentation, Defendants never did so. The merger clause does not preclude any action for such breach.

To the extent this provision conflicts with the merger clause, this must prevail for all causes of action. Under Maryland law, the construction of written instruments is initially a question of law to be determined by the court. *See* Suburban Hosp., Inc. v. Dwiggins, 596 A.2d 1069, 1075 (Md. 1991). It is well-established in Maryland that where there is an ambiguity in a document, that language is to be strictly construed against the party that drafted it because the drafter had the "better opportunity to understand and explain his meaning." Id. Construing the conflict between the additional documentation and merger clause in favor of the Plaintiffs, especially when all facts must be construed in their favor at this stage, shows that a claim has been made for breach of contract for failure to provide the additional documentation which was "needed to carry out the intent and purpose of the parties to the Agreement." *See* Agreement, paragraph 22.

**C.    Plaintiffs Have Sufficiently Pled a Claim for Relief under the Georgia RICO Act.**

Defendant correctly states that Georgia specifies five offenses that qualify as "theft through deception," including:  A person deceives if he intentionally…(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed.  In this instance, Plaintiffs are alleging that Defendant or Defendant's agents made material misrepresentations not only to induce Plaintiffs to enter the contract, but also to stop them from seeking to rescind the deal, in an effort to obtain ill gotten pecuniary gain at Plaintiffs' expense.  As alleged, Defendants represented to Plaintiff that 314,000 points would be purchased for the total price of $22,849 plus closing costs.  Defendants further stated that afterwards, Plaintiff's points would be moved into the National Harbor location lowering all maintenance fees under one contract.  These knowingly false statements were never corrected in numerous conversations that occurred in the months after the partial paperwork was signed.  Defendant did so to obtain unlawful monetary gains from Plaintiffs in violation of O.C.GA. Section 16-8-3.

In addition to the representations and failure to correct, Plaintiffs have made clear allegations that Defendants continued to make unauthorized

deductions of monies from Mr. Hunter's corporate bank account on numerous occasions *after* the alleged merger. As such, Plaintiff is alleging that Defendants, on numerous occasions, surreptitiously withdrew funds from Mr. Hunter's corporate account. As these allegations must be accepted as true for purposes of this motion, this conduct is sufficient to support multiple counts of theft under O.C.G.A. Section 16-8-3(b)(1) and (2) as alleged in paragraph 54 of the Complaint. These actions violate Georgia's RICO act and as such, are sufficient to survive this Motion.

As previously noted, Defendant also cannot avoid Georgia tort law on the basis of the alleged partial contract. The alleged choice of law provision only applies to the agreement and not to any torts, stating "This Agreement shall be governed and construed in accordance with the laws of the State of Maryland." *See* Agreement, paragraph 24. Where an agreement does not explicitly state that all claims shall be governed by a specific law, the choice of law provision does not apply to tort claims. *See* <u>Young v. W.S. Badcock Corp.</u>, 222 Ga.App. 218, 474 S.E.2d 87 (1996). Therefore, this does not defeat Plaintiffs' Georgia RICO claims.

**D.  Plaintiffs Have Sufficiently Plead a Claim for Attorney's Fees.**

Defendant's is correct that a claim under O.C.G.A. § 13-6-11 requires an underlying claim in order for a Plaintiff to recover attorney's fees.

Defendant is also correct that a plaintiff must prevail on its claim in order to recover attorney's fees under the Georgia RICO statute.  For the reasons stated in Plaintiffs' argument and citation of authority, none of Plaintiffs' claims should be dismissed, therefore the underlying claims should survive.

**E.    In the Alternative, if the Court finds that Plaintiffs Have Not Sufficiently Allegedly Representations After the Alleged Merger, Plaintiffs Should Be Allowed to Amend their Complaint.**

Alternatively, even if the court believed that the language of the Complaint was not clear, Plaintiffs have sufficient grounds to justify the amendment of the pleadings and the addition of certain parties.  Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading is served, a party may amend its complaint only by leave of court or by written consent of the adverse party.  While the Court has broad discretion, jurisprudence indicates that, "the Court should freely give leave when justice so requires," and "in the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted."  <u>Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405</u>  (11th Cir. 1994).  However, "a district court may properly deny leave to amend the complaint under Federal Rule of Civil Procedure 15(a) when such an amendment would be futile."  <u>Hall v. Unites Ins. Co. of Am., 367F.3f 1255, 1262-63</u> (11th Cir. 2004).  However, it is not

the general function of federal district court on motion to join additional parties to pass on merits of controversy, nor is granting of such motion a bar to appropriate attack on amended pleadings. *See, e.g.* Kaminsky v. Abrams, 41 F.R.D. 168 (D.C.N.Y. 1966).

In this matter, since Plaintiffs indeed are alleging tortious conduct and breach of contract that occurred *after* the alleged signing of the documents discussed by Defendants, an amendment clarifying these claims would not be futile. "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Federal Rule of Civil Procedure 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." Grant v. Countrywide Home Loans, Inc., No. 1:08-CV-1547-RWS, 2009 WL 1437566, at *8 (N.D. Ga. May 20, 2009). Defendant's motion is based on the contention that Plaintiffs are only alleging misrepresentations before the execution of a contract with a merger clause. This is incorrect, as Plaintiffs have alleged conduct that occurred after November 17, 2008, the date of the alleged contracts. Plaintiffs also allege breaches of contract to the extent the partial agreement would be considered valid and breaches of the duty of good faith and fair dealing. Therefore, any amendment clarifying this position would not be futile as it would specific address the issues at hand and therefore would survive

Federal Rule 12(b)(6) scrutiny.  Thus, if this Court does not believe that the current complaint is sufficiently clear, it should allow Plaintiffs to file an amendment to their pleadings.

## III.  CONCLUSION

For all of the foregoing reasons, Plaintiffs request that Defendant Wyndham Vacation Resorts, Inc.'s Motion To Dismiss Plaintiffs' Complaint For Failure To State A Claim be denied.

Respectfully submitted this 4th day of January, 2009.

/s/ Daniel J. Hoppe Jr.
Georgia Bar No. 366746
Attorney for Plaintiffs

The Law Office of Daniel J. Hoppe, Jr.
One Lakeside Commons
Suite 200B
Atlanta Georgia 30328
(678) 370-0095
dan@hoppelawoffice.com

## CERTIFICATION OF COMPLIANCE

Pursuant to N.D. Ga. LR 7.1 (D), the foregoing Brief in Support of Plaintiff's Response To Defendant Wyndham Vacation Resorts, Inc.'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim has been prepared using Times New Roman (14 point), as required by N.D. Ga LR 5.1(c).

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WILMA BIVIN-HUNTER and )
CHRIS HUNTER,                    )
                                 )
    Plaintiffs,          )
                                 )    Civil Action File No.
vs.                              )    1:09-CV-3465
                                 )
WYNDHAM VACATION                 )
RESORTS, INC., and JOHN DOES     )
1-5,                             )
                                 )
    Defendants.          )
_____  )

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of this BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system and to the following e-mail addresses:

David Baird Carpenter:  dcarpenter@swflp.com

Lawrence S. Burnat:  lburnat@swflp.com

    Respectfully submitted this 4th day of January, 2009.

                  /s/ Daniel J. Hoppe Jr.
                  Georgia Bar No. 366746
                  Attorney for Plaintiffs

The Law Office of Daniel J. Hoppe, Jr.
One Lakeside Commons
Suite 200B
Atlanta Georgia 30328

(678) 370-0095
dan@hoppelawoffice.com