**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Wilma Bivin-Hunter and Chris Hunter, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:09-cv-03465-JOF |
| Wyndham Vacation Resorts, Inc. | : | |
| and John Does 1-5, | : | |
| | : | |
| Defendants. | : | |

## **OPINION & ORDER**

This matter is before the court on Defendants' motion to dismiss [3] and Plaintiffs' motion to amend complaint [12].

**I.   Background**

    **A.   Procedural History and Complaint**

Plaintiffs, Wilma Bivin-Hunter and Chris Hunter, filed suit against Defendants Wyndham Vacation Resorts, Inc. and John Does 1-5, on November 6, 2009, in the Superior Court of Gwinnett County, alleging causes of action of fraud, negligent misrepresentation, breach of contract, conversion, and Georgia RICO. Defendants removed the suit to this court on December 9, 2009, and filed the instant motion to dismiss pursuant to Rule 12(b)(6).

In their complaint, Plaintiffs allege they own timeshare property maintained by Wyndham. *See* Cmplt., ¶ 5. In November 2008, Ms. Bivin-Hunter was visiting a timeshare property in Lake Lure, North Carolina when she went to the sales office to raise concerns about her account. *Id.*, ¶ 6. She spoke with Toni Davis and Mike Duncan about her disappointment in increases in maintenance fees at properties in Royal Vista, Florida, and Fairfield Glade, Tennessee. *Id.*, ¶¶ 6-7. She complained about property taxes paid on Royal Vista, Florida and Cypress Palms, Orlando. *Id.*, ¶ 7.

Mr. Duncan told Ms. Bivin-Hunter that there was a way to lower the maintenance fees and also eliminate the issue of property taxes if Plaintiffs purchased in National Harbor, a new resort in the Washington, D.C. area. *Id.*, ¶ 8. Mr. Duncan told Ms. Bivin-Hunter this deal would give her 315,000 points at a total price of $22,849 plus closing costs. *Id.*, ¶ 10. Plaintiffs relied on these representations. *Id.*, ¶ 9.

Plaintiffs then allege that "to get the deal started," Wyndham and its agents and John Does 1-5 told Ms. Bivin-Hunter she had to sign a contract for 105,000 points at National Harbor on November 17, 2008, with a down payment of $1,664.90 on her American Express card. *Id.*, ¶ 11. Plaintiffs wanted to pay the balance in full immediately. *Id.*, ¶ 12. Defendants also told Ms. Bivin-Hunter after she signed the contract, they would move all of her points to the National Harbor location, thereby lowering all maintenance fees under

2

one contract. *Id.*, ¶ 12. "The office administration sent two deeds for fixed weeks purchasing property in North Carolina as part of the deal." *Id.*, ¶ 13.

At an unknown time after signing the contract, Ms. Bivin-Hunter, "becoming concerned about conflicting materials," tried to contact the sales office. *Id.*, ¶ 14. She finally reached an unknown person in North Carolina who could not provide information about National Harbor, but who referred her to a contact number in Orlando, Florida. *Id.* Both Robert Tomlinson and Alicia Dickson in Orlando were not able to resolve the matter. *Id.*, ¶ 15. Ms. Dickson told Ms. Bivin-Hunter it would cost $198,494 to transfer all of her points to National Harbor, a cost never mentioned by Mr. Duncan. *Id.*

At some point, Plaintiffs learned that Defendants were deducting money for National Harbor from Mr. Hunter's corporate bank account without his authorization or consent. *Id.*, ¶ 16. Ms. Bivin-Hunter demanded a return of this money from Ms. Dickson. *Id.*, ¶ 17.

Plaintiffs filed the instant action alleging claims of negligent misrepresentation (Count One) based upon representations made "to Plaintiff in regard to the sale and transfer of certain properties in their system, including, but not limited to, costs, fees, maintenance and manner of payments." *Id.*, ¶ 22. Plaintiffs contend they suffered $114,000 in damages proximately caused by the negligent misrepresentation. *Id.*, ¶ 30.

In Count Two for fraud, Plaintiffs allege that Defendants made certain representations to them that "were material and false and Defendants were aware that the statements were

3

false. Defendants did not intend to transfer Plaintiffs' ownership or reduce their fees or intend to allow Plaintiffs to own the properties represented at the cost represented. Defendants also committed fraud by omissions by secretly withdrawing funds from Plaintiff Chris Hunter's corporate account without authorization." *Id.*, ¶ 35.

As to Count Three for breach of contract, Plaintiffs allege that Defendants and Plaintiffs agreed on the sale of property, and Plaintiffs "performed all necessary obligations under the contract." *Id.*, ¶¶ 44-45. "Defendant Wyndham breached the contract by failing to transfer the points and ownership as agreed to by the parties." *Id.*, ¶ 46.

Finally, in Count Four, Plaintiffs raise a Georgia RICO claim, contending that Defendants through a pattern of racketeering activity have acquired or maintained Plaintiffs' monies. *Id.*, ¶ 53. Plaintiffs allege predicate acts of theft by deception by withdrawing funds from Plaintiff Hunter's corporate account without authorization and theft by deception by promising to deliver certain properties in exchange for funds and fees it did not intend to deliver. *Id.*, ¶ 54. Plaintiffs seek attorney's fees under O.C.G.A. § 13-6-11 and punitive damages.

**B.  Contentions**

In their motion to dismiss, Defendants argue that Plaintiffs' negligent misrepresentation and fraud claims are estopped by the merger clause in the contract signed between the parties. Defendants further aver that Plaintiffs' breach of contract claim is

4

subject to dismissal because Plaintiffs have not identified a particular portion of the contract they claim was breached. With respect to the Georgia RICO claim, Defendants contend that Plaintiffs have not alleged facts that would constitute theft by deception, the two underlying criminal acts asserted by Plaintiffs.

Plaintiffs respond that the court should not dismiss their claims because they asserted that Defendants made numerous unauthorized withdrawals after the contract was signed, Defendants made misrepresentations in the ten days after the contract was signed, and Defendants breached the duties of good faith and fair dealing required in contracts. In the alternative, Plaintiffs ask in their response, and also then file a separate motion, seeking to amend their complaint.

Defendants contend that the court should not permit Plaintiffs to amend their complaint because Plaintiffs have not attached a proposed amended complaint to their motion and because, even if permitted to amend, Plaintiffs' claims would still be subject to dismissal and therefore any amendment would be futile.

**II. Discussion**

There can be no dispute that Plaintiffs' complaint as it stands is woefully inadequate under the heightened pleading standards that apply to negligent misrepresentation and fraud claims. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or

5

mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

*Id.* A complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they mislead the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*See*, *e.g.*, *United States ex rel. Clausen v. Laboratory Corp.*, 290 F.3d 1301, 1310 (11 th Cir. 2002); *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81 (11th Cir. 2008) (unpublished opinion). Plaintiffs' complaint does not relate the content of the alleged statements, who made them, or when. It is not until Plaintiffs' response brief to Defendants' motion to dismiss that it becomes clear that Plaintiffs' complaint is premised on a theory that Defendants purposefully did not respond to Plaintiffs' inquiries so as to run out the 10 day rescissionary period under the terms of the contract.

Plaintiffs now appear to proffer a theory of fraud based upon the allegation that Defendants delayed responding to Plaintiffs' requests for information and clarification so that the 10 day rescissionary period would expire and Plaintiffs would not be able to cancel the contract for the National Harbor properties. Because Plaintiffs' complaint is devoid of nearly any detail, it is impossible for the court to evaluate this claim on a motion to dismiss.

Furthermore, the fact that Plaintiffs sought to "amend" their complaint through their response brief to Defendants' motion to dismiss shows that Plaintiffs concede the point that

6

the merger clause contained in the contract bars any fraud and negligent misrepresentation claims as to any alleged representations made to Plaintiffs prior to the signing of the contract. This concession is required under Georgia law.[1] The tort of fraud has five elements: (1) false representation, (2) scienter, (3) intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance, and (5) damages. *See*, *e.g.*, *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (2000). Georgia law provides as "a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations." *See First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001). The Supreme Court of Georgia further explained:

> Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties. In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract "cannot be used to vary the terms of a valid written agreement purporting to contain

---

[1]The court notes that the contract signed between the parties states that the "Agreement shall be governed and construed in accordance with the laws of the State of Maryland." *See* Vacation Ownership Purchase and Sales Agreement, ¶ 24. Under Georgia choice of law provisions, however, tort claims are governed by *lex loci delicti* – the law of place where the injury occurred and not where the act was committed. *See Dowis v. Mud Slingers, Inc.*, 279 Ga. 80 (2005). Without making any ruling to the effect, the court presumes Plaintiffs would argue that Defendants' alleged misrepresentations injured them in their home state of Georgia. For the purposes of resolving the instant two motions which requires only the most generalized discussion of legal principles, the court applies Georgia law to Plaintiffs' tort claims.

7

the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud."

*Id.* at 794-95 (citations omitted).

Moreover, Plaintiffs do not even attempt to articulate a more refined breach of contract theory in light of Defendants' argument that Plaintiffs' breach of contract claim should be dismissed for failure to assert a provision of the contract Plaintiffs claim was breached by Defendants. There is precedent for dismissal of breach of contract claims where a plaintiff has failed to point to any particular contractual provision. *See*, *e.g.*, *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) (Thrash, J.) (citing *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (breach of contract claim failed because plaintiffs could not identify any contractual provision breached by defendant)).[2]

Were the court to evaluate Plaintiffs' complaint as it stands now, it would likely grant Defendants' motion to dismiss. Plaintiffs, perhaps recognizing the problems in their original complaint, have filed a motion to amend. As Defendants point out, however, Plaintiffs have failed to attach a proposed amended complaint to their motion. Instead, Plaintiffs simply state that an amendment would provide them the opportunity to "more fully outline the facts that support their causes of action." *See* Motion, at 1. Even after seeing Defendants'

---

[2]The court notes the choice of law issue addressed above, but again, because the court discusses basic principles of law only, the court need not delve into choice of law matters at this stage.

argument on this point, Plaintiffs still do not attach a proposed amended complaint to their reply.

Rule 15(a) of the Federal Rules of Civil Procedure counsels that this court should freely provide leave to amend as justice requires. *See id.* Moreover, the general rule of this circuit is to allow a party at least one opportunity to amend a complaint before dismissing with prejudice. *See Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). The proper method of requesting leave to amend a complaint, however, is to file a motion that either contains the substance of the proposed amendment or attaches that amendment to the motion. *Id.* Plaintiffs have done neither. Such a failure to properly move for leave to amend a complaint, when Plaintiffs have had ample time to do so, is grounds for denial of that request. *Id.* at 1279-80. *See also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (plaintiff "must either attach a copy of the proposed amendment to the motion or set forth the substance there").

The court could deny Plaintiffs' motion on the basis of their failure to attach a proposed amended complaint. However, considering the liberal amendment policies of the Federal Rules of Civil Procedure and attempting to find the most efficient resolution to the problems before the court, the court will deny with leave to renew Defendants' motion to dismiss and grant Plaintiffs' motion to amend complaint. The court warns Plaintiffs that in

9

light of the briefing that has already been done in this matter and the fact that Plaintiffs did not properly submit a proposed amended complaint, this will be the last opportunity to amend their complaint to address the deficiencies. The court will not grant Plaintiffs another opportunity to amend their complaint.

Finally, the court notes that in amending their complaint, Plaintiffs should consider the standards for motions to dismiss announced in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009); *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009).

## III. Conclusion

The court DENIES WITH LEAVE TO RENEW Defendants' motion to dismiss [3] and GRANTS Plaintiffs' motion to amend complaint [12].

Plaintiffs are DIRECTED to file an amended complaint within twenty (20) days of the date of this order. Defendants may then either answer the amended complaint or file a new motion to dismiss within the time frame allowed under the Federal Rules.

**IT IS SO ORDERED** this 30th day of March 2010.

/s  J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)