**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Wilma Bivin-Hunter and         :
Chris Hunter,                  :
                               :
          Plaintiffs,          :
                               :     CIVIL ACTION NO.
        v.                 :     1:09-cv-03465-JOF
                               :
Wyndham Vacation Resorts, Inc.,   :
                               :
          Defendant.        :

## OPINION & ORDER

This matter is before the court on Defendant's motion to dismiss [17].

## I.    Background

### A.    Procedural History

Plaintiffs, Wilma Bivin-Hunter ("Bivin-Hunter") and Chris Hunter ("Hunter"), filed

suit against Defendant Wyndham Vacation Resorts, Inc. on November 6, 2009 in the

Superior Court of Gwinnett County, alleging causes of action of fraud, negligent

misrepresentation, breach of contract, conversion, and Georgia RICO. Defendant removed

the suit to this court on December 9, 2009, and filed a motion to dismiss pursuant to Rule

12(b)(6). Plaintiffs filed a motion to amend their complaint on January 27, 2010. This court

denied with leave to renew Defendant's motion to dismiss and granted Plaintiffs' motion to

amend. In doing so, this court warned Plaintiffs that "were the court to evaluate Plaintiffs' complaint as it stands now, it would likely grant Defendant's motion to dismiss" and stated that Plaintiffs would not have another opportunity to "address the deficiencies" of their complaint. Docket Entry [15], Order, at 10.

In response, Plaintiffs filed an amended complaint.[1] In this amended complaint, Plaintiffs allege they own multiple timeshare properties, jointly and individually, which are maintained by Defendant. *See* D.E. [16], Amended Complaint, ¶ 4. On November 17, 2008, while Bivin-Hunter was visiting a timeshare property in Lake Lure, North Carolina, she went to Defendant's sales office to raise concerns about her account. *Id.*, ¶ 5. While there, Bivin-Hunter met with Defendant's representatives, Toni Davis ("Davis") and Mike Duncan ("Duncan"), and discussed her displeasure with recent increases in maintenance fees and concerns regarding property taxes at several properties maintained by Defendant. *Id.*, ¶ 6.

Davis and Duncan represented to Bivin-Hunter that her concerns regarding both the maintenance fees and the property taxes could be alleviated by purchasing 315,000 points at a new Wyndham resort, National Harbor, for the total price of $22,849 plus closing costs. *Id.*, ¶¶ 7, 9. In order to "get the deal started" it was necessary for Bivin-Hunter to sign a contract in which she purchased 105,000 points at National Harbor and made a down

---

[1] While this amended complaint does address some of the deficiencies noted by the court in its previous order, numerous problems remain. The court addresses many of these issues as they arise in relation to specific causes of action, but takes the opportunity to note here that the complaint still suffers from an unfortunate lack of clarity and specificity.

AO 72A
(Rev.8/82)

payment of $1,664.90 via her American Express Credit Card. *Id.,* ¶ 10. Afterwards, Defendant would consolidate all of Bivin-Hunter's points into the National Harbor location, consequently lowering her fees. *Id.,* ¶ 11.

Relying on these representations, Bivin-Hunter entered into the preliminary agreement with Defendant ("Purchase Agreement"), purchasing 105,000 points for $1,664.90. *Id.,* ¶ 10. The Purchase Agreement stated that Defendant would provide additional documentation as needed and contained a ten day rescission and cancellation period. *Id.* Davis and Duncan also verbally represented to Bivin-Hunter, both before and after she signed the contract, that additional documentation would be forthcoming. *Id.* Following the execution of the contract, Davis signed a document ("Davis Addendum")[2] which stated:

> To Whom It May Concern: Wilma Bivin-Hunter will have at least 315,000 points for a total of $22,489 plus closing costs. Once Wilma has properties out of her corporations name we will be able to re-write the contracts into one or two deeds depending on her request. Wilma knows in order to do a trade into one or two deeds it requires 315,000 point purchase.

D.E. [16], Amended Complaint, ¶ 12. The Davis Addendum is undated, single-spaced, and typed on a blank piece of copy paper. *See* D.E. [20-2], Exhibit Attached to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss. The paper is signed by Davis and Bivin-

---

[2]The court refers to this document as an addendum because that is how Plaintiffs refer to it in their amended complaint. *See* Amended Complaint, ¶ 41.

Hunter but there is no other indication of Wyndham's involvement, such as a letterhead or watermark. *Id.*

Soon after, Bivin-Hunter began receiving conflicting information and materials regarding the contract. *Id., ¶* 13. When the promised additional documentation did not arrive, Bivin-Hunter called the sales office on November 21, 2008 in order to rescind the agreement. The office was closed. *Id.* When Bivin-Hunter finally reached a Wyndham representative, she was not given "a direct answer" but they assured her they would "help her resolve her issues." *Id.*

On December 14, 2008, after the rescission period expired, Susan Wood ("Wood"), Defendant's employee, wrote to Bivin-Hunter with a separate purchase contract. *Id., ¶* 14. The contract did not comply with Davis' or Duncan's prior representations and was not the supplemental documentation promised in November. *Id.* After speaking with several of Defendant's agents in an attempt to resolve the matter, Bivin-Hunter was referred to agent Alicia Dickson ("Dickson"). *Id., ¶* 16. Dickson informed Bivin-Hunter that it would cost $198,494, rather than the original $22,489 represented by Davis and Duncan, to consolidate all Bivin-Hunter's points in National Harbor. *Id.* This was the first time a representative of Defendant informed Bivin-Hunter that consolidating her points would cost more than $22,489. *Id.*

The only facts alleged in the Amended Complaint relating to Plaintiff Chris Hunter are that neither he nor any of his corporate entities had any contractual obligations with respect to the National Harbor properties. *See* Amended Complaint, ¶ 17. Thus, his claims do not arise out of Plaintiff Bivin-Hunter's claims as to that property. However, Plaintiff Chris Hunter had an interest in other of Defendant's properties separate from that of Bivin-Hunter and pursuant to those other interests, he had authorized Defendant to deduct certain fees directly from his corporate accounts. *Id.* Starting December 2008, Chris Hunter alleges Defendant began making additional, unauthorized withdrawals via wire from Hunter's accounts. *Id.* By the time Hunter reviewed his records and placed a stop payment on the account in June 2009, Defendant had made six unauthorized withdrawals. *Id.,* ¶ 20. Based on these alleged improper withdrawals, Chris Hunter raises claims for negligent misrepresentation, fraud, breach of contract, RICO, and unjust enrichment. The court addresses Chris Hunter's claims separately from those of Bivin-Hunter.

## B.    Contentions

In its motion to dismiss Plaintiffs' amended complaint, Defendant argues that Bivin-Hunter's negligent misrepresentation and fraud claims (Counts One and Two) are estopped by the merger clause in the Agreement and Statement of Understanding executed by Bivin-Hunter. Defendant further avers the claims of both Bivin-Hunter and Chris Hunter are subject to dismissal because both Plaintiffs' allegations of fraud or negligent

5

misrepresentation fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and are "based entirely on *future* events and are therefore not actionable as a matter of law." Defendant argues both Plaintiffs' breach of contract claims should be dismissed because both Plaintiffs fail to identify any contractual provision that was breached. With respect to the Georgia RICO claims, Defendant argues they should be dismissed because Plaintiffs failed to plead the claims with particularity as required by Rule 9(b) and failed to allege facts sufficient to support their claims that Defendant committed "theft by deception." Finally, Defendant contends that Plaintiff Hunter's unjust enrichment claim cannot proceed because he has also raised a breach of contract claim.

Both Bivin-Hunter and Hunter argue that the court should not dismiss their claims because they did in fact sufficiently plead fraud and negligent misrepresentation. Bivin-Hunter argues her fraud claims are not excluded by the rule of future events because she alleged that Defendant had the present intent not to perform or knew the future events relied upon would not take place, and that the merger clause fails to estop her fraud and negligent misrepresentation claims because the claims occurred after the Purchase Agreement or were contained in the Purchase Agreement itself. Both Bivin-Hunter and Hunter argue their breach of contract claims should not be dismissed because they pled four specific breaches of contract. Hunter rejects Defendant's contention that Rule 9(b) applies to his RICO claims, since his claim arises from theft rather than fraud. While Bivin-Hunter acknowledges that

6

Rule 9(b) applies to her claim of theft by deception, she contends that "for the RICO claims related to fraud, [she has] met the spirit and letter of the particularity rule." Finally, Chris Hunter argues Defendant's contentions regarding his unjust enrichment claim fails for two reasons: (1) because the funds withdrawn from Hunter's account were for the timeshare property at National Harbor, and therefore "outside the scope of the express contract"and "subject to a valid equitable claim," and (2) he has the right to plead in the alternative both a breach of contract claim and an unjust enrichment claim.

## II. Discussion

### A. Negligent Misrepresentation

In Count One, Bivin-Hunter alleges negligent misrepresentation based upon Defendant's promises, both verbally and in writing, that Bivin-Hunter would receive 315,000 points for $22,489 plus closing costs and promises that Defendant was attempting to resolve the contractual discrepancies. D.E. [16], Amended Complaint, ¶ 28. The Amended Complaint also raises a new negligent misrepresentation claim on behalf of Hunter, regarding Defendant's representations that it would only make those deductions which Hunter had previously authorized. *Id.,* ¶ 29. Plaintiffs jointly contend they suffered a total of $175,000 in damages, proximately caused by Defendant's negligent misrepresentations. *Id.,* ¶ 37.

AO 72A
(Rev.8/82)

The elements of negligent misrepresentation are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such person's reasonable reliance on the false information; and (3) economic injury as a proximate result. *ITC Deltacom Communications, Inc. v. U.S. LEC Corp.,* Civ.A. No. 3:02-CV-116-J, 2004 WL 3709999, at *10 (N.D. Ga. March 15, 2004) (Camp, J.) (*citing Smiley v. S & J Invs., Inc.,* 260 Ga. App. 493 (2003)). Here, Bivin-Hunter alleges: (1) Defendant "represented that Ms. Bivin-Hunter would be able to reduce her costs and fees in their conversations in Lake Lure, North Carolina in November 2008" and that "additional documentation" would be forthcoming[3]; (2) that Defendant expressly misrepresented in the Davis Agreement on November 17, 2008, that Bivin-Hunter would receive "315,000 points for $22,489 plus closing costs"[4]; and (3) that from November 17 to November 26, 2008 Defendant misrepresented that it was "attempting to help Ms. Bivin-Hunter resolve [her] issues."[5]

Defendant argues that Bivin-Hunter's negligent misrepresentation claims are barred by the merger clause in the Purchase Agreement. As a matter of law, "a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations." *First Data POS, Inc. v. Willis,* 273 Ga. 792, 795 (2001). Here, the Purchase Agreement contained an unambiguous merger

---

[3] Amended Complaint, ¶ 28.

[4] Amended Complaint, ¶ 28.

[5] *Id.*

AO 72A
(Rev.8/82)

clause which stated that it represented the entire agreement between the parties. *See* Purchase Agreement, ¶ 20. Thus, Bivin-Hunter is barred from relying on Defendant's pre-contractual representations that she would be able to reduce her fees and that further documentation would be forthcoming.

Bivin-Hunter also alleges negligent misrepresentation arising from a series of phone calls she made to Defendant from November 17 to November 26, 2008. As to these conversations, Defendant argues that Plaintiffs failed to plead their negligent misrepresentation claim with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that, "[in] all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they mislead the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*See, e.g., United States ex rel. Clausen v. Laboratory Corp.,* 290 F.3d 1301, 1310 (11th Cir. 2008); *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,* 287 Fed. Appx. 81 (11th Cir. 2008) (unpublished opinion). Essentially, Rule 9(b) requires plaintiffs to plead with particularity the "who, what, where, when, why, and how" of the alleged fraud or mistake. *WESI, LLC v. Compass Environmental, Inc.,* 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (Duffey, J.) (*citing In re World Access, Inc.,* 119 F. Supp. 2d 1348, 1353 (N.D. Ga.

2000)). Bivin-Hunter fails to identify with particularity who made these representations, exactly what statements were made, when the statements were made, and how she was misled.[6] Because Bivin-Hunter fails to provide any detail as to the nature, timing, content, or participants in these conversations, the court finds that her negligent misrepresentation claims stemming from these calls fail to meet the requirements of Rule 9(b).

Bivin-Hunter's only remaining claim of negligent misrepresentation, made in paragraph 28 of Plaintiffs' Amended Complaint, is the one arising from the Davis Addendum.[7] Bivin-Hunter alleges that Defendant negligently supplied false information to foreseeable persons,[8] that they reasonably relied on the false information,[9] and that they

---

[6] *See* Amended Complaint, ¶ 28 ("Defendant also stated, through its agents on the phone to Ms. Bivin-Hunter in Georgia, during the period of November 17 to November 26, that it was attempting to help Ms. Bivin-Hunter resolve the issues related to this suit."); *Id.*, ¶ 29 ("Defendant, when obtaining Mr. Hunter's authorization to directly deduct fees for other properties, represented that only fees for his properties would be deducted.") This is the only information Plaintiffs provide with respect to these alleged post-contractual representations.

[7] The Davis Addendum was allegedly signed by Bivin-Hunter and Davis *after* the Purchase Agreement was signed. *See* Amended Complaint, ¶ 28.

[8] *See id.* ("Defendant, through Ms. Davis, expressly stated in writing, after the signing of the Purchase Agreement on November 17, 2008, that 'Wilma Biven-Hunter will have at least 315,000 points for a total of $22,489 plus closing costs. Once Wilma has properties out of her corporations name we will be able to re-write the contracts into one or two deeds depending on her request.'").

[9] *See id.*, ¶ 32 ("[Plaintiffs] reasonably relied upon the information and would not have engaged in these transactions if they had known of Defendant's misrepresentations"). This court entertains some doubt that Plaintiffs will be able to adequately prove reasonable reliance considering the nature of the document, but recognizes that Plaintiffs have

AO 72A
(Rev.8/82)

suffered economic injury as a proximate result of that false information.[10] These elements were pled with particularity, as required by Rule 9(b). This court finds that with respect to the Davis Addendum *only*, Bivin-Hunter has sufficiently pled, with particularity, her negligent misrepresentation claim in order to withstand Defendant's motion to dismiss.

Plaintiff Hunter raises a single claim for negligent misrepresentation arising from Defendant's representations to him regarding the deduction of fees for his properties. Specifically, Hunter alleges that Defendant, "when obtaining Mr. Hunter's authorization to directly deduct fees for other properties, misrepresented that only fees for his properties would be deducted."[11] Hunter does not identify any details surrounding these alleged misrepresentations. Because Hunter fails to identify the "who, what, where, when, why and how" behind these representations, this claim fails to meet the particularity requirements of Rule 9(b). *WESI, LLC,* 509 F. Supp. 2d at 1358.

## B. Fraud

In Count Two for fraud, Bivin-Hunter alleges that Defendant "willfully concealed material facts regarding the additional documentation and costs in an effort to run out the

---

adequately pled their claim for the purpose of a motion to dismiss.

[10] *See id.*, ¶ 36 ("As a direct and proximate result of Defendant and its agents' misrepresentations, Plaintiffs suffered substantial damages, including, but not limited to, the loss of the value of the property, costs incurred for purchase and transfer, ...interest, incidental costs and attorney's fees").

[11] Amended Complaint, ¶ 29.

AO 72A
(Rev.8/82)

clock on [Bivin-Hunter's] rescission period" and "failed to disclose that the actual cost for the anticipate (sic) transfer was in excess of $198,000." Amended Complaint, ¶ 43. Specifically, Bivin-Hunter alleges fraud resulting from: (1) Defendant's pre and post-contractual representations regarding the conversion and value of the points Bivin-Hunter would receive by signing the Purchase Agreement;[12] (2) the Davis Addendum memorializing these representations;[13] (3) the pre-contractual representations that additional documentation would arrive further memorializing the agreement;[14] and (4) Defendant's willful concealment of material facts regarding the additional documentation and the actual cost of the transfer "in an effort to run out the clock on her rescission period" from November 17th to 27th.[15]

A plaintiff asserting he was fraudulently induced to enter a contract has two options: "(1) to promptly rescind the contract after discovering the fraud and sue in tort for the recovery of the contract's consideration, as well as any other damages; or (2) affirm the contract and sue for damages resulting from the contract." *Skipper Sams, Inc. v. Roswell-Holcomb Associates, Ltd., et al*. 247 Ga. App. 237, 242 (2000). If a party affirms the contract, he or she is bound by its terms. The contract's merger clause would then estop that party from arguing he or she relied on representations other than those in the contract.

---

[12] *See id.*, ¶ 41.

[13] *Id.*

[14] *Id.*, ¶ 42.

[15] Amended Complaint, ¶ 43.

AO 72A
(Rev.8/82)

*Skipper Sams, Inc.,* 247 Ga. App. at 242. Here, Bivin-Hunter has affirmed the Purchase Agreement[16] and, therefore, is bound by its terms, including the merger clause. Therefore her claim of fraud, in as much as it results from Defendant's pre-contractual representations about the transaction and additional documentation, is precluded by the Purchase Agreement.

Further, a claim for fraud, as with negligent misrepresentation, must be pled with particularity. Fed. R. Civ. P. 9(b). Thus, Bivin-Hunter needed to plead the "who, what, where, when, why, and how"of the alleged fraud. *WESI, LLC,* 509 F. Supp. 2d at 1358.

---

[16] In their Amended Complaint, Plaintiffs mention that they are "entitled to rescind their transactions with Defendant and obtain a return of all monies invested, interest, and incidental costs." Amended Complaint, ¶ 50. This is the only time in the Amended Complaint where Plaintiffs indicate they could be seeking to rescind their contracts with Defendant. Georgia law requires that rescission be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered. *Weed Wizard Acquisition Corp. v. A.A.B.B., Inc.,* 201 F. Supp. 2d 1252, 1261 (N.D. Ga. 2002) (Story, J.). Georgia courts have held that as short a time as seven months after discovery of grounds for rescission is not timely. *Id.* at 1260. Further, the intent to rescind must be unequivocal. Simply notifying a party that you are entitled to rescind does not constitute rescission under Georgia law. *Id.* Once an aggrieved party decides to rescind, they "must adhere to the intent to rescind and may waive any claim for rescission by failing to do so." *Id.*

Here, it appears from Plaintiffs' Amended Complaint and Brief in Opposition to Defendant's Motion to Dismiss that they both have chosen to focus on their breach of contract claims. *See* D.E. [20], Brief in Opposition to Defendant's Motion to Dismiss, at 14. Neither Plaintiff lists rescission among their other requests for relief, but do request remedies for breach of contract. *See* Amended Complaint, ¶ 77. Neither Plaintiff identifies any direct communication with Defendant notifying it of their decision to rescind. Therefore, this court reads the Amended Complaint as expressing both Plaintiffs' choice to affirm the Purchase Agreement. As Plaintiffs have chosen to affirm the Purchase Agreement, they are therefore not entitled to rescission.

13

Plaintiffs' allegations regarding the November 17th through 26th conversations and other post-contractual representations about the Purchase Agreement fail to meet the standard of particularity required by Rule 9(b). Although Bivin-Hunter does plead that the statements were knowingly false, *see* Amended Complaint, ¶ 45 , she fails to identify who made these representations, exactly what was said, when the statements were made, and how she was misled by these statements.

The sole remaining source of Bivin-Hunter's fraud claim is the Davis Addendum signed by Bivin-Hunter on November 17, 2008. The elements of fraud include: "(1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff." *WESI, LLC*, 509 F. Supp. 2d at 1358. With respect to the Davis Addendum, Bivin-Hunter pled: (1) that Defendant's statements made in the Davis Addendum "were material and false";[17] (2) that "Defendants (sic) were aware that the statements were false";[18] (3) that Defendant "did not intend to . . . transfer Plaintiffs' ownership or reduce their fees"[19] and "took these actions to induce Ms. Bivin-Hunter to invest monies and to generate additional fees, and later to induce

_____

[17] *See* Amended Complaint, ¶ 45.

[18] *Id.*

[19] *Id.*

14

her to refrain from rescinding the contract";[20] (4) that "Plaintiff reasonably relied on these statements and representations";[21] and (5) that "as a direct and proximate result of Defendant's fraud, Plaintiff suffered damages, including, but not limited to, the loss of the value of the property, costs incurred for purchase and transfer, . . . loss of the ability to rescind, interest, incidental costs and attorney's fees." The court finds that these allegations regarding the Davis Addendum address the five elements of fraud, and the particularity requirements of Rule 9(b). Therefore Defendant's motion to dismiss Bivin-Hunter's claims of fraud stemming from the Davis Addendum must be denied.[22]

Plaintiff Hunter makes a single claim for fraud arising from Defendant's willful concealment[23] of material facts regarding several unauthorized deductions from Hunter's

---

[20] *Id.*, ¶ 46.

[21] *Id.*, ¶ 47.

[22] Defendant further argues Bivin-Hunter's fraud claim fails because it is based entirely on future events and therefore not actionable as a matter of law. While fraud "cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events," those claims "arising from a representation of a future event made with knowledge that it is false or [an] intention not to perform may be actionable." *Fuller v. Perry*, 223 Ga. App. 129, 131 (1996). Here, Bivin-Hunter has pled that Defendant had knowledge that the representations made in the Davis Addendum were false and that Defendant had no present intention to perform them.

[23] There is some confusion as to whether Hunter is pleading fraud by omission or actual fraud. Hunter alleges Defendant "committed fraud by omission and concealment by secretly withdrawing funds from Plaintiff Chris Hunter's corporate account." *Id.*, ¶ 45. However, in Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, Hunter claims that "it is obvious via the pleadings that . . . [Hunter's] claims are not constructive fraud, but actual fraud." D.E. [20] at 11. Since Hunter made it clear he is not advancing a claim of

15

corporate accounts for properties solely related to Ms. Bivin-Hunter.[24] Hunter fails to identify with particularity any of the details surrounding the alleged fraudulent concealment of material facts. Hunter does not identify who concealed these material facts, what material facts were concealed, where and when those facts were concealed, or the manner in which they were concealed. Thus, Hunter's claim falls far short of the particularity requirements of Rule 9(b) and must be dismissed.

### C.      Breach of Contract

In Count Three, Hunter raises a single breach of contract claim alleging Defendant "breached its agreements with Mr. Hunter by taking unauthorized deductions from his bank accounts."[25] Bivin-Hunter raises three claims for breach of contract, claiming Defendant, (1) "breached the contract . . . by failing to provide the paper work as required by paragraph 22,"[26] (2) further breached this contract by "failing to transfer the points and ownership as agreed to by the parties and memorialized in the addendum signed by Ms. Davis,"[27] and (3) "breached the implied covenant of good faith and fair dealing" in regards to its contract with Bivin-Hunter. Plaintiffs jointly contend they suffered substantial damages in excess of

_____

fraud by omission, this court will not address it.

[24] *See* Amended Complaint, ¶ 44.

[25] Amended Complaint, ¶ 58.

[26] *Id.,* ¶ 56.

[27] *Id.*

16

$175,000 "as a direct and proximate result of Defendant Wyndham's breaches."[28] Defendant objects to both Hunter and Bivin-Hunter's breach of contract claims, noting both Plaintiffs have failed to identify a particular contractual provision Defendant has breached.[29]

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), the Supreme Court explored and clarified the standards for notice pleading. *Twombly* established that a complaint's factual actual allegations "must be enough to raise a Plaintiff's right to relief above a speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The Supreme Court further clarified Rule 8's requirements in *Iqbal*, emphasizing that a complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* A well-pled complaint must move a claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In a claim for breach of contract, it is not always necessary for a plaintiff to point to a specific contractual provision that a defendant has breached. However, it is necessary for a plaintiff to plead sufficient facts to establish a contractual obligation.[30] These facts need

---

[28] Amended Complaint, ¶ 60.

[29] D.E. [17-2], Defendant's Motion to Dismiss, at 12.

[30] *Compare Gooden v. Wells Fargo Home Mortgage*, No. AW-08-2521, 2010 WL 1068119 at *4 (D. Md. March 17, 2010) (granting summary judgment when plaintiffs failed to produce evidence proving defendant owed plaintiffs specific contractual obligation) *with*

AO 72A
(Rev.8/82)

not amount to full evidentiary support, but must be more than a simple assumption that a contractual obligation exists between the parties.[31]

Plaintiff Hunter alleges Defendant "breached its agreements with [him] by taking unauthorized deductions from his bank accounts without consent for obligations to which he was not a party." While Hunter references "agreements" with Defendant, he fails to offer any other factual support regarding the existence of such agreements or their terms. Both Plaintiffs were put on notice by Defendant's original motion to dismiss[32] and this court's subsequent order[33] of the need to point to a particular contractual provision when alleging a breach of contract. Rather than heeding this court's warning, Hunter submitted a new claim referencing vague agreements with Defendant and proffered no facts establishing the nature of these agreements.[34] Plaintiff Hunter's claim for breach of contract fails to

---

*Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 791 (noting plaintiff must allege breach of particular contractual provision but that breach of contract does occur if it affects contract's purpose in important way).

[31] *Compare Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 791 (Noting at motion to dismiss stage, plaintiff does not have to forecast full evidentiary support for its breach of contract claim) *with American Casual Dining, L.P. v. Moe's Southwest Grill, LLC*, 426 F. Supp. 2d 1356, 1368 (N.D. Ga. 2006) (dismissing plaintiff's breach of contract claim because of failure to identify particular contractual provision that was breached).

[32] D.E. [3-2], at 8.

[33] D.E. [15], at 8.

[34] Plaintiffs merely allege that "Neither Mr. Hunter nor his corporate entities had any obligations for National Harbor. Mr. Hunter did have an interest in other properties and had certain fees directly deducted from his corporate accounts. Despite this, Defendant began

18

adequately allege facts establishing contractual obligations between himself and Defendant and is therefore insufficient to withstand Defendant's motion to dismiss.

Bivin Hunter alleges Defendant breached the Purchase Agreement by failing to provide additional documentation as required by Section 22. Defendant contends this provision did not create a contractual obligation to provide further documentation to Plaintiffs. In order to state a claim for breach of contract under Maryland law,[35] the complaint "must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Swedish Civil Aviation Admin. v. Project Management Enterprises*, 190 F. Supp. 2d 785, 791 (D. Md. 2002). Section 22 states, "Buyer and Seller agree to execute any additional documents which may be needed to carry out the intent and purposes of the parties to this Agreement."[36] The express

in December 2008 to withdraw monies for National Harbor without authorization or consent from Mr. Hunter from his corporate bank account . . . Defendant owed Mr. Hunter a duty to inform him of specific withdrawals and to only withdraw monies from his accounts that had been expressly consented to by Mr. Hunter." Amended Complaint, ¶¶ 17, 20. These paragraphs establish the existence of a contract but fail to identify its terms or that Defendant breached it.

[35] The Purchase Agreement contained a choice of law clause which stated that the "agreement shall be governed and construed in accordance with the laws of the State of Maryland." Purchase Agreement, ¶ 24. Georgia courts will normally enforce a contract's choice of law clause. *Carr v. Kupfer*, 250 Ga. 106, 107 (1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."). Plaintiffs have not argued that this clause is in any way contrary to public policy. Therefore Maryland law, not Georgia law, governs the Purchase Agreement.

[36] Purchase Agreement, ¶ 22.

19

language of Section 22 does not obligate Defendant to supply additional documentation to Bivin-Hunter. Rather, it contemplates that the parties might have to undertake additional obligations in the future. In so far as Bivin-Hunter's breach of contract claim arises from Defendant's failure to provide additional documentation, it fails to state a claim upon which relief may be granted and is therefore insufficient to withstand Defendant's motion to dismiss.

Bivin-Hunter also alleges Defendant breached its contractual obligations under the Davis Addendum[37] by "failing to transfer the points and ownership as agreed to by the parties." Defendant contends the language of the Davis Addendum "does not create any additional obligations for the parties," but merely "presents a possibility for future action." D.E. [17-2], Defendant's Motion to Dismiss, at 13. While it is unclear whether Bivin-Hunter will ultimately be able to succeed on this breach of contract claim, she has pled sufficient facts to support her claim that Defendant owed her a contractual obligation and breached it. Therefore, this court finds that Bivin-Hunter's claim for breach of contract arising from the Davis Addendum is sufficient to withstand Defendant's motion to dismiss.

---

[37] While the Purchase Agreement clearly stated that it would be governed and construed in accordance with the laws of the state of Maryland, the Davis Addendum did not. However, because Bivin-Hunter construed the Davis Addendum as an Addendum in the Amended Complaint and not as a separate contract, it was considered an Addendum to the Purchase Agreement and thus was construed in accordance with Maryland law.

20

Finally, Bivin-Hunter pled Defendant breached the implied covenants of good faith and fair dealing by attempting to prevent her from exercising her rescission rights under the Purchase Agreement.[38] A contract in Maryland gives rise to an implied duty of good faith and fair dealing concerning the performance and enforcement of a contract. *Blondell v. Littlepage*, 413 Md. 96, 113 (2010). This implied covenant "does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]." *Id.* Instead, an implied duty of good faith and fair dealing:

> . . . is simply a recognition of conditions inherent in expressed promises. Thus, if a party promises to pay for its purchase of a business from the profits of a business, inherent in this promise is the agreement that the promisor will exercise reasonable diligence in continuing to conduct the business . . . Stated otherwise, under the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them.

*Eastern Shore Markets, Inc. v. J.D. Associates, Ltd. Partnership*, 213 F.3d 175, 184 (4th Cir. 2000) (citations omitted). Maryland courts interpret implied covenants of good faith and fair dealing narrowly; the covenants only come into play when a party must use its discretion during the course of fulfilling its contractual obligations. *Compare Eastern Shore Markets, Inc.*, 213 F.3d at 184 (recognizing implied covenants to run business diligently when party

---

[38] Amended Complaint, ¶ 57. Bivin-Hunter also raises this claim in regards to Defendant's misrepresentations prior to the Purchase Agreement. However, that claim is excluded by the merger clause in the Purchase Agreement which confines the Purchase Agreement, and any implied obligations arising from it, to its express terms.

21

promises to use business profits to pay for purchase) *with Parker v. Columbia Bank*, 91 Md. App. 346, 366 (1992) (noting lender not obligated by implied covenants of good faith and fair dealing to protect plaintiffs' interests by monitoring contractor's work and loan balance).

Here, Bivin-Hunter suggests Defendant violated the implied covenants of good faith and fair dealing because its actions and statements induced her to not exercise her rescission rights.[39] These "actions and statements" appear to be those of Defendant's agents, who could not give Bivin-Hunter "a direct answer" to her questions but promised to help her "resolve the issues" surrounding the Purchase Agreement.[40] Bivin-Hunter does not allege Defendant's agents made false statements or prevented her from exercising her rescission rights. Instead, it appears Bivin-Hunter sought answers from Defendant's agents, these answers were unsatisfactory, and rather than rescinding the Purchase Agreement, she chose to affirm it. These facts do not fall into the paradigm of Maryland case law that deals with implied covenants of good faith and fair dealing. Defendant here had no discretion or contractual

---

[39] Amended Complaint, ¶ 57. The court draws this inference from the fact section of Plaintiffs' Amended Complaint, in which Bivin-Hunter alleges, "On or about November 21, 2008, Ms. Bivin-Hunter, from her residence in Georgia, sought to contact the sales office regarding these representations. . . . Once she was finally able to reach someone to inquire about the National Harbor contract, no one could give her a direct answer. However, Defendant's agents, who were answering the phone, indicated that they would help her resolve the issues. The agents had no intention to do so, but instead were attempting to stall so Ms. Bivin-Hunter's rescission period would expire." *Id.*, ¶ 13.

[40] *Id.*

obligation surrounding Bivin-Hunter's decision to rescind. Finding Defendant breached the implied covenants of good faith and fair dealing under these facts would be to find that Defendant was obligated to take affirmative actions under the Purchase Agreement it was clearly not required to take. Such an outcome would be out of step with Maryland law. The facts alleged by Bivin-Hunter are insufficient to support a claim for breach of the implied covenants of good faith and fair dealing. Because the court is unconvinced that this fits the paradigm of good faith and fair dealing cases, Bivin-Hunter's breach of contract claim arising from these implied covenants is dismissed.

### D.  Violation of Georgia's Racketeer Influence and Corrupt Organizations Act

Plaintiffs allege "Defendant, through a pattern of racketeering activity, has acquired or maintained, or has endeavored to acquire or maintain, Plaintiffs' monies."[41] Plaintiff Hunter claims, "Defendant engaged in six separate acts of theft by deception prohibited by O.C.G.A. § 16-8-3(b)(1) and (2) by secretly and without authorization withdrawing funds from Plaintiff Chris Hunter's corporate account on six occasions between December 2008 and June 2009." Bivin-Hunter alleges "Defendant engaged in theft by deception prohibited by O.C.G.A. § 16-8-3 by promising or endeavoring to promise to deliver certain properties in exchange for funds and fees that it had no intention of delivering."[42] Both Plaintiffs

---

[41]  Amended Complaint, ¶ 65.

[42]  *Id.*

AO 72A
(Rev.8/82)

allege "Defendant engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, by using the mail and wire to perpetuate the scheme [to defraud Bivin-Hunter] . . . and to take monies, without authorization, from Plaintiff Chris Hunter's accounts."[43]

---

[43] *Id.*, ¶ 66.

AO 72A
(Rev.8/82)

The Georgia RICO statute, O.C.G.A. § 16-14-4(a), states:

It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

In civil cases, RICO plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) results in an injury to business or property (6) by reason of the substantive RICO violation." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006). To demonstrate a "pattern of racketeering activity," the plaintiffs must allege that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1264 (11th Cir. 2004); O.C.G.A. § 16-14-3(8)(A). Theft by deception and mail and wire fraud are recognized as predicate acts and are listed in the statute as types of "racketeering activity." O.C.G.A. § 16-14-3(9)(A)(ix) and (xxix).

Here, Defendant argues both Plaintiffs have failed to plead each of their RICO claims with particularity as required by Federal Rule of Civil Procedure 9.[44] "When a RICO claim

---

[44] Defendant states in a footnote that, "Because Bivin-Hunter agreed that Maryland law governs all disputes arising from the Agreement, Wyndham does not believe that the Georgia RICO Act applies in this matter." D.E. [17-2], Defendant's Motion to Dismiss, at 17 n.6. While neither party briefed the choice of law issue, the court notes the choice of law provision in the Purchase Agreement states, "This agreement shall be governed and construed in accordance with the laws of the State of Maryland." D.E. [3-2], ¶ 24. The court is unpersuaded that this choice of law provision is broad enough to cover anything but

is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b)." *Liquidation Comm'n of Banco Intercontinental, S.A.*, 530 F.3d 1339, 1355 (11th Cir. 2008). If fraud is pleaded as an alternative claim, "the non-fraud claims . . . need not be pleaded with particularity unless the same misrepresentation forms the basis of both the fraud and non-fraud claim." *Id.*

Plaintiffs and Defendant disagree over whether theft by deception is a fraud claim that must meet the pleading standards of Rule 9(b). In *Liquidation*, the Eleventh Circuit discussed Rule 9(b)'s application to RICO claims and suggested that if the predicate statutes require proof of a misrepresentation, then the predicate act must be pleaded with particularity under Rule 9. *Id.,* 1356. Further, other circuits have repeatedly recognized that theft by deception is essentially fraud-based and must be pleaded with particularity.[45] In light of this case law, this court finds that both Plaintiffs must plead theft by deception claims

---

breach of contract claims. *See Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-CV-270-99HTS, 2005 WL 1027261, at *3 (M.D. Fla. March 30, 2005) (noting narrow choice of law provisions are generally limited to breach of contract claims). Therefore, this court will apply Georgia law to all of Plaintiffs' claims except for breach of contract.

[45] *See Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 n.4 (D.N.J. 2000) (noting state law claim of theft by deception cannot be predicate act under federal RICO, but that even if it were, "it would require pleading with particularity"); *Cook v. Zions First Nat. Bank*, 645 F. Supp. 423, 425 (D. Utah 1986) (noting that Rule 9b applies to RICO claims premised on fraudulent conduct, which it equated with "a scheme to defraud or the specific intent to commit fraud or theft by deception"); *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 367 (Bkrtcy. S.D. Tex. 2009) ("Rule 9(b) generally does not apply to claims of civil theft; but rather only to claims of theft by deception.").

AO 72A
(Rev.8/82)

with particularity and state the "who, what, where, when, why, and how" of the alleged acts in order to survive Defendant's motion to dismiss. *WESI, LLC,* 509 F. Supp. 2d at 1358.

First, Hunter alleges Defendant committed theft by deception "by secretly and without authorization withdrawing funds from Plaintiff Chris Hunter's corporate account on six occasions between December 2008 and June 2009."[46] This fails to meet the particularity requirements of Rule 9(b). Nowhere in the Amended Complaint does Hunter state the date of these withdrawals, the amount, or the specific representations by which Defendant deceived Hunter in order to deprive him of his property. Hunter's theft by deception[47] claim arising from Defendant's alleged unauthorized withdrawals is far from particular and fails to meet the heightened pleading standard of Rule 9(b).

Bivin-Hunter claims Defendant engaged in theft by deception "by promising or endeavoring to promise to deliver certain properties in exchange for funds and fees that it had no intention of delivering."[48] This too fails to meet the particularity requirements of Rule

---

[46] Amended Complaint, ¶ 66.

[47] Both Plaintiffs appear to argue in their Brief in Opposition to Defendant's Motion to Dismiss that the predicate acts they called "theft by deception" are really just "unauthorized theft of monies by conversion." D.E. [20], at 21. Unfortunately, on a motion to dismiss a court is confined to the allegations made in a plaintiff's complaint. While Plaintiffs did describe Defendant's acts as "theft by conversion" in their complaint's facts and allegations section, Amended Complaint, ¶ 19, they referred to them as "theft by deception" and cited to the relevant theft by deception statute when they were describing them in their RICO claim. *Id.*, ¶ 66. Both Plaintiffs pled theft by deception and that is the claim this court will analyze.

[48] *Id.*

9(b). Bivin-Hunter offers no guidance as to which promises or endeavors amount to theft by deception.[49] The only possible construction of this claim that could withstand the heightened pleading requirements of Rule 9 is one which incorporated and referenced the representations made in the Davis Addendum. However, even if the court considered such an allegation sufficient, Bivin-Hunter's RICO claim would still fail because the Davis Addendum is just one predicate act. A plaintiff needs at least two predicate acts in order to sufficiently allege a pattern of racketeering activity. *Jackson*, 372 F.3d at 1264.

Finally, both Bivin-Hunter and Hunter claim Defendant engaged in "mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, by using the mail and wire to perpetuate" these respective acts of theft by deception. Mail or wire fraud occurs when a person "(1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mail or wires in furtherance of that scheme." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). It is undisputed that all claims of mail and wire fraud must meet the particularity requirements of Rule 9(b). *Id.* This requirement "compel[s] the plaintiff to inject some measure of precision and substantiation into his or her allegations."

---

[49] Bivin-Hunter cannot rely on those representations made prior to the Davis Addendum by Toni Davis and Mike Duncan that "there was a way to lower the maintenance fees to the lowest in the company . . . by purchasing points in National Harbor." *Id.*, ¶ 7. A RICO claim alleging theft by deception in regards to these representations is precluded from consideration by the merger clause in the Purchase Agreement. *See First Data*, 273 Ga. at 795 ("A RICO count alleging theft by deception based upon pre-contractual representations is foreclosed by the written terms of a valid contractual merger clause.").

*Duracell, Inc. v. SW Consultants, Inc.*, No. 1:88-cv-2786-RHH, 1989 U.S. Dist. LEXIS 7543, at *5-6 (N.D.Ga. May 12, 1989) (Hall, J.). In *American Dental*, the plaintiffs' RICO claims arising from mail and wire fraud did not survive a motion to dismiss. 605 F.3d at 1296. The court noted that:

> though the complaint sets out at least six examples of e-mail and letter communications between Defendants and Plaintiffs, including online advertisements, fee schedules, contracts, and Explanations of Benefits ("EOBs") documents, Plaintiffs do not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated in any of these communications, nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b) . . . Here, Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud. If the specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is 'plausible on its face.'

*American Dental,* 605 F.3d at 1291-92 (citations omitted). The same shortcomings highlighted by the court in *American Dental* are present here. In fact, the complaint in the instant case is even more deficient than the one rejected by the Eleventh Circuit in *American Dental*, because here neither Bivin-Hunter nor Hunter has listed specific examples of wire or mail communications between Defendant and Plaintiffs that they claim were fraudulent.[50]

---

[50] Throughout the entire Amended Complaint, Bivin-Hunter references only three phone conversations and one mailing she received regarding Defendant's promises to deliver certain properties in exchange for certain funds. Bivin-Hunter has not explained how any of these conversations or documents misled her and has not highlighted a single misrepresentation. For example, Bivin-Hunter claims she attempted to contact Defendant on November 21. When she "was finally able to reach someone . . . no one could give her a direct answer [but simply] . . . indicated that they would help her resolve her issues." This tells the court nothing about what misrepresentations were made, who made them, how they

As a result, Plaintiffs have failed to plead their RICO claim with the requisite particularity and it cannot withstand Defendant's motion to dismiss.[51]

### E. Unjust Enrichment

Plaintiff Hunter alleges "Defendant obtained monies from Plaintiff Chris Hunter that were outside of any contract to which he had agreed," Amended Complaint, ¶ 70, and that "Defendant has been unjustly enriched at Plaintiff's expense for [these] unauthorized deductions...." *Id.*, ¶ 72. It is an established principle of contract law that "where there is an express contract, there can be no recovery based upon an unjust enrichment theory." *Han v. Han*, 295 Ga. App. 1, 4 (2008). Hunter acknowledges throughout the complaint that he had an existing and valid contract with Defendant allowing Defendant to withdraw monies

_____

were misleading, etc. Bivin-Hunter states she spoke with "Robert Tomlinson in Orlando in April 2009" but that "he too was unable to resolve these issues." Bivin-Hunter fails to state what issues were discussed or highlight any misleading representations made by Tomlinson. The only mailing Bivin-Hunter claims she received from Defendant was a "separate purchase contract" received on December 14, 2008. Bivin-Hunter does not allege that this contract contained any misrepresentations or misleading materials, just that it "was not the documentation promised." Amended Complaint, ¶ 14. Similarly, Hunter refers to six unauthorized withdrawals made via wire from his corporate accounts between December 2008 and June 2009, but offers no facts concerning the specific dates the funds were withdrawn, where the accounts were held, who withdrew the funds, or how the withdrawals were misleading. Amended Complaint, ¶ 66. Once again, both Plaintiffs' allegations of fraud are "woefully inadequate." *See* D.E. [15], Order Denying Motion to Dismiss, at 5.

[51] Since both Plaintiffs no longer have a valid RICO claim, neither Bivin-Hunter nor Hunter may recover attorney's fees under O.C.G.A. § 16-14-6. However, Plaintiff Bivin-Hunter may still seek attorney's fees under O.C.G.A. § 13-6-11 and punitive damages for those claims that have survived Defendant's motion to dismiss.

AO 72A
(Rev.8/82)

from his account for certain purposes. Amended Complaint, ¶¶ 17, 29, 70. Hunter does not allege that this contract is somehow void or unenforceable. While Plaintiffs may plead in the alternative, they cannot do so in the face of an assertion that the contract expressly covers the circumstances. *See Kwickie/Flash Foods, Inc. v. Lakeside Petroleum, Inc.*, 246 Ga. App. 729, 730 (2000) (recovery under theory of unjust enrichment not authorized when claim is based on express contract and parties have not repudiated contract). Because Hunter has acknowledged that he has a valid contract with Defendant that expressly covers the circumstances, his claim for unjust enrichment fails under Federal Rule of Civil Procedure 12(b)(6) and must be dismissed.

## III. Conclusion

The court GRANTS Defendant's motion to dismiss on: (1) Plaintiff Bivin-Hunter's negligent misrepresentation claims stemming from Defendant's representations regarding the Purchase Agreement; (2) Plaintiff Chris Hunter's negligent misrepresentation claims regarding the unauthorized deductions from his corporate accounts; (3) Bivin-Hunter's fraud claims stemming from Defendant's representations regarding the Purchase Agreement, Defendant's promise of additional documentation, and Defendant's willful concealment of material facts regarding the Purchase Agreement; (4) Hunter's fraud claims arising from Defendant's alleged willful concealment of material facts regarding the deductions from Hunter's accounts; (5) Bivin-Hunter's breach of contract claims regarding Defendant's failure to provide additional paperwork and Defendant's breach of the implied covenants of

good faith and fair dealing; (6) Hunter's breach of contract claim (7) both Plaintiffs' Georgia RICO claims; and, (8) Hunter's unjust enrichment claim. The court DENIES Defendant's motion to dismiss on Plaintiff Bivin-Hunter's negligent misrepresentation, fraud, and breach of contract claims arising from the Davis Addendum.

The court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss [17].

**IT IS SO ORDERED** this 31st day of August 2010.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)